Allen, J.
The appellee alleges in his bill, that by the false and fraudulent representations of a certain James R. Johnson, he was induced to enter into a contract for the purchase of a number of lots in what was called South St. Louis, an addition to the City of St. Louis in the State of Missouri; and that the promissory note in the proceedings mentioned was given for part of the purchase money. The note was made in the City of Philadelphia, and the laws of Pennsylvania, applicable to such an instrument, place it on the footing of bills of exchange. Before the note fell due it was endorsed by the payee Johnson, to the appellant. This, according to the answer of the appellant to the amended bill, occurred in the fall of 1838. The appellant claiming to be a bona fide holder of the note, denies all knowledge of the transactions on which it is alleged to have been founded. This denial devolves on the appellee the burden of proving that the note was given for part of the purchase money of the lots, which Johnson the payee contracted to sell to him, under the circumstances set forth in the hill. The answer of the payee admits that the note was given for the consideration charged in the bill, and the fact is distinctly proved by his deposition. But his answer is not evidence against his co-defendant; and his credit as a witness has been so successfully assailed by the appellant, that the counsel of the appellee admits he is unworthy of credit.
The charges of fraud and imposition practised upon the appellee in the sale of the lots in question, and the want of title in Johnson to the property he agreed to sell, seem not to be controverted, and are fully made out by the testimony. But that the promissory note, the subject of controversy, was given in consideration of that purchase, is not conceded, and must be proved. The evidence upon this point, rejecting the testimony of the payee, is not perfectly clear: still in the absence *264 of all opposing proof, enough is disclosed by the record to satisfy the mind, that the note was given in consideration of the lots agreed to be purchased. It bears date on the same day with the article of agreement for the sale of the lots. Neither the maker or payee appears to have been a resident of Philadelphia, where the contract was made and note executed. The agreement recites that the purchase money of 14,590 dollars, was to be paid in instalments, one fourth part thereof in one year, the residue at future periods, with interest on the said instalments as long as they remain unpaid, annually in advance; and that the said Zane had given to said Johnson his negotiable notes for the instalments, and also his several negotiable notes for the amount of interest which will annually accrue according to the agreement. It is proved by a witness that in the year 1836 or ’37, Johnson spoke of the sale of lots he had made to Zane, and wished to trade off the notes given by Zane for the purchase money. At that time he must have been the holder of the note in question, as according to the appellant’s answer, it was not endorsed by Johnson to him until the fall of 1838. These circumstances, in the absence of evidence of any other dealing or transaction between the parties, raise the presumption that this note was given in part for the purchase money of lots ; and probably was given for the interest on one of the deferred instalments, which may not have been for the precise three fourths of the purchase money.
The consideration for which the note was made, being proved, and the fraud practised on the maker, and the entire failure of the consideration fully established, there can be no doubt that as between the payee and the maker, the latter would be entitled to relief. But the note has passed by endorsement into the hands of a third person; and the question arises whether under the pleadings and proofs in this cause, the maker has shewn himself entitled to relief against the endorsee. In con *265 sidering this question, it becomes necessary to ascertain what were the precise allegations of the bill; and what facts it became necessary for the appellee to establish, to make out a prima facie case in his favour. The bill alleged the fraud of the payee, in the sale of the lots : That the note was given for part of the purchase money, and that the note had been assigned by the payee to the appellant, who had brought suit and recovered a judgment for the amount. But there is no allegation that the appellant was an endorsee without value, or that he had notice of the fraud. As a general rule, the endorsement of a negotiable note is of itself prima facie evidence that the endorsee has paid value for it. But the authorities referred to in the argument, shew, that where the payee has procured the note by fraud, this general presumption is rebutted, and the holder cannot recover without proving that he has paid value. The reason on which this exception to the general rule rests, is briefly stated by Parke, B. in Bailey v. Bidwell, 13 Meeson & Welsby 73. “It certainly,” he says, “has been the universal understanding since the later cases, that if the note were proved to have been obtained by fraud, or affected by illegality, that afforded a presumption that the person who had been guilty of the illegality, would dispose of it, and would place it in the hands of some other person to sue upon it; and that such proof casts upon the holder the burden of shewing that he was a bona fide endorsee for value.” The same principle has been acted on in Massachusetts, in Munroe v. Cooper, 5 Pick. R. 412; in New York, in the case of Rogers v. Morton, 12 Wend. R. 484; and more especially in Pennsylvania, where this note was made, in the case of Holme v. Karsper, 5 Binn. R. 469. Nor is the requisition for such proof, confined to cases in which the note was put into circulation by fraud, as where it has been lost or stolen. In the case of Rogers v. Morton, 12 Wend. R. 484, the *266 note was voluntarily given for an assumed balance, on a settlement of accounts. The balance was in part made up by a charge for a draft of which the creditor was never holder; and proof of this fraud committed on the makers at the time the note was given, was held sufficient to throw upon the plaintiffs the burden of shewing that they were bona fide holders for value. To the same effect is the case of Thomas v. Newton, 2 Carr & Payne 606. Swift v. Tyson, 16 Peters’ R. 1, does not touch this question. There it appeared in evidence that the bill had been taken in payment of a pre-existing debt, and the Court decided that a pre-existing debt was a fair and valuable consideration within the protection of the general rule. It would seem, therefore, that where, as in this case, the fraud in the procurement of the note is averred and proved, the maker has brought himself within the exception to the general rule. The onus probandi is shifted, and it devolves upon the holder to shew that he has paid value. Whether the receiving the note in payment of a pre-existing debt, constitutes such a valuable consideration as to bring the party within the protection of the general rule, need not be enquired into.. In this case the appellant rests upon the affirmative allegations of his answer, and the presumption arising from the mere endorsement. The latter we have seen is not sufficient after the proof of fraud; and the allegations of the answer not being responsive to the bill, must be proved. The only testimony bearing upon this point, is the deposition of the payee; and the appellant has proved that he is unworthy of credit.
It is insisted, that as the appellant has obtained a judgment at law, and the appellee comes into equity for relief, he is as much bound to negative facts, which would entitle the plaintiff at law to recover, as to affirm those which it is necessary for himself to prove. This would be against all the rules of pleading in chancery, and would be imposing on the plaintiff an impracticable *267 duty. He may not be cognizant of the facts upon which the plaintiff at law relies, to entitle himself to recover, notwithstanding the matter relied upon by the party seeking relief in equity might, if standing alone, make out a proper case for the interposition of that Court. The appellee had a right to rest his case upon the averment of such fraud as vitiates the contract; and of the fact that the security so fraudulently procured, had come to the possession of the holder by assignment. If the circumstances under which the holder acquired the paper, are such as still entitle him to recover from the maker, they must be shewn in his answer; and not being responsive to any allegation in the bill, must be proved.
This case rests upon the presumption arising from the endorsement alone. I therefore think, that under the state of facts appearing in the record, the appellee has shewn himself entitled to the relief prayed for.
As to the objection made, not in the answers, but in this Court, to the jurisdiction of the Court to grant relief, it seems to me that the accidental loss of the agreement between the appellee and Johnson, furnished a sufficient excuse for the failure to make the defence at law. That agreement was necessary to prove the consideration of the note; and the accident of its loss at the time, justifies the interposition of a Court of equity.
I think the decree should be affirmed.
The other Judges concurred in the opinion of Allen, J.
Decree affirmed.